Brody A. McBride (SBN 270852)
Trenton G. Lamere (SBN 272760)
SINGLETON SCHREIBER
McKENZIE & SCOTT, LLP
450 A Street, 5th Floor
San Diego, CA 92101
P: (619) 771-3473
F: (619) 255-1515
bmcbride@ssmsjustice.com
tlamere@ssmsjustice.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA FROST,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, MASON CASSIDY, UNKNOWN SAN DIEGO SHERIFF'S DEPARTMENT PERSONNEL,<br><br>    Defendants. | No. **'21CV1903 BEN AGS**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    In November 2020, Plaintiff Kristina Frost was a book-and-release detainee at the San Diego Central Jail.

2.    At first, Ms. Frost, a transgender woman, was placed alone in a holding cell. She was then moved, without any reasonable justification, and against her wishes, to a minimally monitored cell with three men.

3.    Sadly–and foreseeably–one of the men in the cell viciously attacked Ms. Frost.  His closed-fist punches to Ms. Frost's face resulted in serious bodily injuries, including a broken jaw, so far requiring two surgeries to repair.

4.    The San Diego Sheriff's Department Deputy who put Ms. Frost in that cell, believed to be Defendant Mason Cassidy, was deliberately indifferent to Ms. Frost's safety

COMPLAINT

1  risks and needs as a pretrial detainee.  And Deputy Mason's deliberate indifference in this

2  case is part of a larger pattern of Sheriff's Deputies failing to protect those in the County's

3  care and custody.

4        5.      Plaintiff now sues for recovery of damages pursuant to 42 U.S.C. § 1983 and

5  various state laws.

6                              **JURISDICTION AND VENUE**

7        6.      The Court has subject matter jurisdiction over this action pursuant to 28

8  U.S.C. §§ 1331 and 1367, as Plaintiff asserts causes of action arising under 42 U.S.C. §

9  1983 and state-law claims supplemental to the section-1983 claims.

10       7.      The Court has personal jurisdiction over Defendants in this action, as each of

11 Defendants were domiciled, or were engaged in routine administration/business, in the

12 State of California at the time of the events giving rise to this action.

13       8.      Plaintiff has complied with all California Government Claims Act

14 requirements for asserting state-law causes of action against public entities and employees,

15 like Defendants, including the presentation of a claim for damages to the County, which

16 the County rejected, and the timely filing of this Complaint following the rejection of

17 Plaintiff's claim.  *See* Cal. Gov't Code §§ 900 et seq.

18       9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the

19 events giving rise to this action occurred in the City of San Diego, California, which is

20 located within the Southern District of California.

21                                    **PARTIES**

22       10.     Plaintiff Kristina Frost ("Ms. Frost" or "Plaintiff") is an individual who, at

23 all times relevant to this pleading, was domiciled in California.

24       11.     Defendant County of San Diego ("County") is a municipal entity duly

25 organized under California law.  The San Diego Sheriff's Department ("Department") is

26 the County's primary law-enforcement agency.

27       12.     Defendant William Gore ("Sheriff Gore") is an individual who, at all times

28 relevant to this pleading, was the San Diego County Sheriff, ultimately responsible for

COMPLAINT

1  Department policies and procedures, as well as the hiring, training, supervision, and
2  disciplinary needs of the County's law-enforcement officers, and, moreover, was also a
3  final policymaker for the County.

4      13.    Defendant Mason Cassidy ("Deputy Cassidy") is an individual who, at all
5  times relevant to this pleading, was working in the course and scope of his employment
6  by the County and the Department as a Department Deputy, and acting under color of state
7  law.

8      14.    Defendants Unknown San Diego Sheriff's Department Personnel
9  ("Unknown Department Personnel") are individuals who, at all times relevant to this
10 pleading, were working in the course and scope of their employment by the County and
11 Department, and acting under color of state law.  Plaintiff will seek leave to amend this
12 pleading if and when she learns the true identities of these defendants.

13                              **FACTS**

14 **I.    Violation of Plaintiff's Fourteenth Amendment Rights**

15     15.    On November 25, 2020, Ms. Frost was taken into County custody at the San
16 Diego Central Jail on a book-and-release charge.

17     16.    When she arrived, Ms. Frost informed jail staff she is a trans woman.  Ms.
18 Frost's DMV records and driver's license state her gender is female.  And Ms. Frost was
19 wearing feminine clothes (including high-cut shorts and a bra) at the time of booking.
20 Despite this, deputies repeatedly misgendered Ms. Frost, both in person and in official
21 reports documenting the assault giving rise to this case.

22     17.    At first, Ms. Frost was placed alone in a holding cell.  Then, without any
23 reasonable justification, Unknown Department Personnel (believed to include Deputy
24 Cassidy) moved Ms. Frost into a holding cell with three men.  It was clear Ms. Frost did
25 not want to go into the cell, and she was confused as to why she was being moved into the
26 cell.  No reasonable deputy would have put Ms. Frost in a minimally monitored cell with
27 three men.  She was forced into the cell anyway.

28     18.    Ms. Frost sank onto a bench and buried her head in her shirt.  As the night

COMPLAINT

1  wore on, she fell asleep.

2      19.    Just after midnight, Ms. Frost was awakened by blows to her head.  One of

3  the men in the cell had begun punching Ms. Frost's head with closed fists.

4      20.    Deputies observed this assault, yet none of them immediately intervened.

5  Ms. Frost saw one or more deputies pausing outside the cell before entering to intervene.

6  Deputies eventually removed the assailant from the cell and put him alone in another

7  holding cell.

8      21.    Even though she was there on a book-and-release charge, jail staff then made

9  Ms. Frost wait upwards of twelve hours without medical care before she was released.

10  She was in excruciating pain from her injuries the entire time she waited.  And because

11  her jaw was injured, she could not eat food or even drink water while she waited.

12      22.    After being released, Ms. Frost immediately went to a hospital, where she

13  was diagnosed with two jaw fractures.  Her injuries have so far required two separate

14  operations to place and remove hardware from her jaw, including a long period of her

15  mouth being wired shut.  Ms. Frost continues to suffer from these injuries and must now

16  wear dentures.

17  **II.    Department's Pattern of Failing to Protect People in County Custody**

18      23.    Defendants' failure to protect Ms. Frost was a foreseeable result of a pattern

19  among Department personnel of failing to keep people in County custody safe.

20      24.    As a topline matter, for example, the mortality rate in San Diego County jails

21  is the highest among California's largest counties.  At least 140 people died in County

22  custody from 2009 to 2019.

23      25.    Inmate injuries and deaths are a foreseeable result of Department personnel

24  failing to protect people in the County's care and custody:

25          a. On June 25, 2011, Daniel Sisson died from an acute asthma attack made

26              worse by drug withdrawal.  He lay dead for several hours before a fellow

27              inmate found him.  Due to lack of communication between jail staff, jail staff

28              had failed to monitor him.

COMPLAINT

b. In September 2012, Bernard Victorianne suffered for five days from drug overdose because the staff ignored available (yet unshared) information that he had ingested methamphetamine. Mr. Victorianne was placed in segregation instead of in a medical unit. He was eventually found dead in his cell from acute drug intoxication.

c. In 2014, former U.S. Marine Kristopher NeSmith committed suicide. Last seen alive about 10:00 p.m. one night, a guard noticed a bedsheet fashioned into a rope. The deputy then failed to communicate this information to other jail staff or to call for psychiatric intervention. No other jail staff took any further action. Mr. NeSmith was later found dead, having hung himself.

d. In 2014, Ronnie Sandoval showed obvious symptoms of overdose, yet jail staff did not summon help or treat him for overdose. Nor did jail staff pass on information regarding Mr. Sandoval's condition during the shift change. Mr. Sandoval died from drug intoxication.

e. In 2015, jail personal failed to input critical medical information into JIMS about Ruben Nunez, leading to Mr. Nunez dying from water intoxication. One of the jail staff testified she did not know how to use JIMS to add "alerts," meaning the most critical information regarding an inmate. She testified she was never trained to do this.

f. In 2016, Heron Moriarty committed suicide after jail staff failed to communicate among themselves about the twenty-eight telephone calls his wife had placed to warn jail staff of Mr. Moriarty's suicidal intentions.

g. In 2018, at least four suicides occurred in the Central Jail. Most notably, on October 8, 2018, an inmate killed himself the same day he was booked into Central Jail. He reportedly used food to suffocate himself while he was being housed in a unit designed for suicidal inmates.

COMPLAINT

26.     Inmate injuries and death are also a foreseeable result of Department personnel <u>failing to adequately monitor those in the County's care and custody</u>, including the following examples:

  a. In the case of Mr. Sisson's death in 2011, jail staff failed to check on Mr. Sisson for hours.  Mr. Sisson died during drug withdrawal.

  b. In 2012, as Mr. Victorianne lay on his cell floor, naked and unconscious, none of the deputies conducted proper security check, soft counts, or hard counts. One deputy was told by an inmate that Mr. Victorianne was not breathing. This deputy kicked Mr. Victorianne, stated Mr. Victorianne "twitched," and left him to die in his cell.

  c. In 2014, Christopher Carroll, who was severely mentally ill, was placed in segregation.  While unobserved, Mr. Carroll had smeared blood on the wall of his cell, urinated on the floor, and threw food and feces on the ceiling before hanging himself.  Jail staff failed to conduct proper cell checks despite knowing about Mr. Carroll's condition.

  d. In Mr. Nunez's case, a deputy saw Mr. Nunez in his cell sitting in his own vomit and urine.  Despite seeing Mr. Nunez twice in this condition, this deputy failed to summon help or take Mr. Nunez to medical services.  The deputy left Mr. Nunez in his cell to die.

  e. In Mr. NeSmith's case in 2014, a jail deputy saw Mr. NeSmith attempting suicide, but took no action to stop Mr. NeSmith or to call for psychiatric intervention.

  f. In February of 2016, Richard Boulanger hung himself in his cell.  His cellmate pressed the emergency all button, but no deputy came to the cell for approximately 20 minutes.  A subsequent investigation revealed that one of the deputies did not break stride or look into Mr. Boulanger's cell during a cell check.  The investigation revealed that during cell checks, the deputy peered into each cell for approximately once second in violation of policy.

COMPLAINT

The investigation further revealed a practice in which the deputies were turning off the sound of the emergency call buttons, lowering the volume, or muting the inmate intercom system so that no sound could be heard. Call buttons in many of the housing units did not function, which made no sound when pressed. The audio for the monitor in the jail tower did not function well so that it was difficult to hear tones and sounds from the monitor even when the volume was turned to the maximum level.

g. In March 2019, Ivan Ortiz was allowed to commit suicide, in a unit designed for suicidal inmates. Mr. Ortiz suffocated himself with a plastic lunch bag (which he should not have had), and jail staff failed to conduct safety checks often enough to prevent Mr. Ortiz's death.

27.     Ms. Frost's assault was a foreseeable result of Department personnel ignoring critical information, failing to protect people in the County's care and custody, and failing to adequately monitor individuals in the County's care and custody.

28.     As a result of Defendants' actions, Ms. Frost suffered economic damages, including medical bills, and non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Failure to Protect/Deliberate Indifference to Safety Risks and Needs

### (Against Deputy Cassidy and Unknown Department Personnel)

29.     The foregoing paragraphs are incorporated herein by this reference.

30.     By placing Plaintiff, an obviously transgender woman, in a minimally monitored cell with three men, and then waiting to intervene in the foreseeable attack on Plaintiff, Defendants were deliberately indifferent, and/or recklessly disregarded, Plaintiff's safety risks and needs, in violation of Plaintiff's Fourteenth Amendment rights as a pretrial detainee.

COMPLAINT

31.     Plaintiff's safety risks and needs were obvious, and Defendants were actually aware of the risks Plaintiff would face in a minimally monitored cell with three men. Transgender women are particularly vulnerable to violence and sexual assault in male correctional settings.

32.     Defendants failed to take reasonable steps to safeguard Plaintiff, despite Defendants' knowledge of a substantial risk to Plaintiff's safety.

33.     As an actual and foreseeable result of Defendants' deliberate indifference, Plaintiff suffered the injuries set forth herein.  Plaintiff thus seeks compensatory damages in an amount according to proof.

34.     Defendants' conduct was, moreover, malicious and/or done in reckless disregard of Plaintiff's constitutional rights; thus, Plaintiff further seeks an award of punitive damages to punish Defendants' conduct and deter such conduct in the future.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – *Monell*

### (Against County)

35.     The foregoing paragraphs are incorporated by this reference.

36.     Plaintiff's Fourteenth Amendment rights were violated as set forth herein.

37.     Leading up to Plaintiff's injuries, the County's final policymakers in charge of Department policies and procedures, including Sheriff Gore, were on notice that that Department personnel responsible for overseeing the safety of those in the County's custody and control were falling short of constitutional requirements.  These final policymakers failed, however, to take corrective action in time to prevent the harms to Plaintiff alleged herein.

38.     Plaintiff's constitutional rights were violated as an actual and proximate result of a County policy, consisting of a pattern among Department personnel of failing to protect people in the County's care and custody, including ignoring and failing to communicate critical information and failing to adequately monitor those in the County's care and custody.  Jail staff ignored critical information (i.e., Plaintiff's gender) in

8

COMPLAINT

assuming care and custody of Plaintiff, foreseeably resulting in injuries to Plaintiff. Jail staff, moreover, failed to monitor Plaintiff in light of her particular safety risks and needs, and failed to immediately intervene in the attack on Plaintiff.

39.  Plaintiff's rights were also violated as an actual and proximate result of a County policy, consisting of deliberate indifference to the training, supervision, and disciplinary needs of Department personnel working in the County jails. The consistent misgendering of Plaintiff by multiple Department personnel, as well as the malice and recklessness with which Plaintiff was placed in danger, make the failure to adequately train and supervise Department personnel obvious. No well trained corrections staff would have allowed this incident to happen.

40.  As a result of the foregoing County policies, Plaintiff suffered the injuries set forth herein. Plaintiff thus seeks compensatory damages in an amount according to proof.

## THIRD CAUSE OF ACTION

### Cal. Civ. Code § 52.1(b) – Bane Act

### (Against Deputy Cassidy, Unknown Department Personnel, County)

41.  The foregoing paragraphs are incorporated herein by this reference.

42.  Defendants interfered with Plaintiff's Fourteenth Amendment rights through intimidation and coercion.

43.  Defendants intended to violate and/or recklessly disregarded Plaintiff's Fourteenth Amendment right to be free from deliberate indifference to her safety risks and needs.

44.  Defendants' deprivation of Plaintiff's Fourteenth Amendment rights foreseeably resulted in Plaintiff's assault by another inmate, resulting in the injuries set forth herein. Plaintiff thus seeks compensatory damages in an amount according to proof.

45.  Plaintiff is, moreover, entitled to statutory damages, including three times the actual amount of her damages, with a minimum of $4,000, pursuant to Civil Code section 52(a).

46.  Because Defendants acted in the course and scope of their employment as

COMPLAINT

County employees, the County is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

## FOURTH CAUSE OF ACTION

### Negligence

**(Against Deputy Cassidy, Unknown Department Personnel, County)**

47.  The foregoing paragraphs are incorporated herein by this reference.

48.  On November 25, 2020, Defendants had a duty to act with ordinary care in carrying out their duties as corrections officers, including reasonable care in jailing individuals with heightened safety risks and needs, with regard to communicating and paying attention to critical information, with regard to cell placements, with regard to monitoring inmates, and with regard to intervening in inmate assaults on other inmates.

49.  Defendants breached the foregoing duties when they placed Plaintiff in substantial danger of suffering serious harm without taking reasonable measures to abate the risk of harm.  Defendants further failed to immediately intervene to stop another inmate's assault on Plaintiff.

50.  As a direct and proximate result of Defendants' breaching the foregoing duties, Plaintiff suffered the injuries set forth herein.  Plaintiff thus seeks compensatory damages in an amount according to proof.

51.  Moreover, because Defendants were acting in the course and scope of their employment as Sheriff's Deputies when the foregoing conduct occurred, the County is vicariously liable for the injuries Plaintiff suffered as a result of the deputies' tortious conduct under California Government code section 815.2.

## FIFTH CAUSE OF ACTION

### Negligent Training, Supervision, and Discipline

**(Against Sheriff Gore, Unknown Department Personnel, County)**

52.  The foregoing paragraphs are incorporated herein by this reference.

53.  On November 25, 2020, Sheriff Gore and other currently unknown supervisors had a duty to use reasonable efforts to ensure the County's corrections officers

10

COMPLAINT

were trained to perform their duties in a competent manner. Defendants' duty to Plaintiff arose, in particular, when Department personnel took Plaintiff into the County's care and custody.

54.     As demonstrated by their decision to unnecessarily and unreasonably subject Plaintiff to assault and injury, the deputies involved in this incident were incompetent to perform their work as corrections officers and, in particular, incompetent to keep those in County custody safe.

55.     Defendants knew or should have known, at the time of this incident, that Department personnel, including Deputy Cassidy, were incompetent to perform their work as corrections officers and, in particular, incompetent to deal with an individual with heightened safety risks and needs.

56.     Defendants' negligent training and supervision was a substantial factor in actually and proximately causing Plaintiff to suffer the damages alleged herein.

57.     Because Sheriff Gore and other supervising defendants were acting in the course and scope of their employment for the County as managers and/or supervisors of corrections officers, the County is vicariously liable under California Government Code section 815.2.

## **PRAYER FOR RELIEF**

58.     Based on the foregoing facts and causes of action, Plaintiff seeks the following relief:

     a.  judgment in favor of Plaintiff and against Defendants on all causes of action asserted herein;

     b.  compensatory damages (including economic and non-economic damages), in amounts to be determined at trial;

     c.  punitive damages, against the individual defendants only, in an amount sufficient to punish the conduct giving rise to this action and to deter such conduct in the future;

     d.  reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, California

COMPLAINT

1   Government Code section 52.1(h), and all other relevant statutory and case

2   law; and

3      e.  any and all other relief in law or equity to which Plaintiff may be entitled and

4   which this Court deems just and proper.

5   **<u>DEMAND FOR JURY TRIAL</u>**

6       59.   Plaintiff demands, under the Seventh Amendment, a trial by jury as to each

7   and every cause of action asserted herein.

8

9   Dated: November 09, 2021         SINGLETON SCHREIBER
                              McKENZIE & SCOTT, LLP

10

11                                 By:    *s/Trenton G. Lamere*

12                                 Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

COMPLAINT