UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA FROST,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, MASON CASSIDY, UNKNOWN SAN DIEGO SHERIFF'S DEPARTMENT PERSONNEL,<br><br>　　　　　　　　　Defendants. | Case No.: 21cv01903-L-AGS<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S COMPLAINT**<br><br>**[ECF No. 11]** |

Pending before the Court are Defendants' motion to dismiss and motion to strike Plaintiff's Complaint. (ECF No. 11.) Plaintiff opposed the motion, (ECF No. 12), and Defendants replied, (ECF No. 13). The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Defendants' motion to dismiss is denied in part and granted in part with leave to amend. Defendants' motion to strike is denied.

I.　**BACKGROUND**

According to the allegations in the Complaint (ECF No. 1), on November 25, 2020, Plaintiff Kristina Frost was taken into custody at the San Diego Central Jail on an unidentified book-and-release charge. (ECF No. 1, at 3.) Plaintiff informed the jail staff upon arrival that she is a trans woman. (*Id.*) Plaintiff's DMV records and driver's license state her gender is female, and Plaintiff was wearing high-cut shorts and a bra at the time of booking. (*Id.*) Plaintiff alleges that despite this, deputies repeatedly misgendered her, both in person and in official reports documenting the assault giving rise to this case. (*Id.*)

At first, Plaintiff was placed in a holding cell by herself. (*Id.*) Eventually, Unknown Department Personnel, which Plaintiff believes includes Deputy Mason

Cassidy ("Deputy Cassidy"), moved her into a holding cell with three men. (*Id.*) Plaintiff claims that it was clear she did not want to go into the cell and that she was confused as to why she was being moved, but she was forced to move anyway. (*Id.*) Once inside the cell Plaintiff sat on a bench, buried her head in her shirt, and fell asleep. (*Id.* at 3–4.)

Plaintiff was awakened by blows to her head. (*Id.* at 4.) One of the men in the cell had begun punching Plaintiff in the head with closed fists. (*Id.*) Plaintiff claims that once deputies were alerted of the assault, one or more of them paused outside the cell before entering to intervene. (*Id.*) Deputies eventually removed the assailant and put him alone in another holding cell. (*Id.*)

Plaintiff was then forced to wait upwards of twelve hours in excruciating pain without medical care before she was released. (*Id.*) Plaintiff could not eat or drink during this time due to the injuries to her jaw. (*Id.*) After being released, Plaintiff immediately went to a hospital where she was diagnosed with two jaw fractures. (*Id.*) Her injuries have so far required two operations and a long period of having her mouth wired shut. (*Id.*) Plaintiff continues to suffer from these injuries and must now wear dentures. (*Id.*)

### A.   Legal Claims

Plaintiff voluntarily dismissed, without prejudice, her third and fourth causes of action against the County of San Diego ("County") and her fifth cause of action. (ECF No. 12, at 10–11.) Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) Defendants move to dismiss the remaining claims of: (1) deliberate indifference to safety risks and needs under 42 U.S.C. § 1983 against Deputy Cassidy and Unknown Department Personnel; (2) municipal liability for unconstitutional custom, practice, or policy and failure to properly train under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), against the County; (3) violations of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 ("Bane Act") against Deputy Cassidy and Unknown Department Personnel; and (4) negligence against Deputy Cassidy and Unknown Department Personnel. (ECF No. 1).

In the event any of her claims are dismissed, Plaintiff requests leave to amend her Complaint to cure any deficiencies. (ECF No. 1, at 20.)

The Court has federal question jurisdiction over the federal constitutional claims and supplemental jurisdiction over the state law claims. 28 U.S.C. §§ 1331, 1367(a).

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When "matters outside the pleading are presented to and not excluded by the court," the 12(b)(6) motion converts

into a motion for summary judgment. Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Types of materials which are suitable for judicial notice include facts that are readily capable of accurate determination by "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1).

Plaintiff did not attach to the Complaint any additional facts that do not appear on the face of the Complaint, nor are any additional facts incorporated therein. (*See* ECF No. 1.) Further, facts discussed in the parties' briefs but not in the Complaint fall outside the scope of judicial noticeability. *See* Fed. R. Civ. P. 201. Accordingly, the Court declines to consider facts not alleged in the Complaint in deciding the present motion.

### III. FEDERAL CONSTITUTIONAL CLAIMS

To state a claim under 42 U.S.C. § 1983 for violation of federal constitutional rights, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a federal constitutional or statutory right. *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000). A public employee acts under color of state law within the meaning of § 1983 while acting in his or her "official capacity or while exercising . . . responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988).

State officials may be sued under § 1983 in their individual capacities for damages. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To be liable under § 1983, an individual must personally participate in the alleged deprivation of rights. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir.2010). Plaintiffs must then establish causation to "demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Where, as here, a plaintiff seeks damages against state officials, a strong presumption is created in favor of an individual capacity suit because an official capacity

suit for damages would be barred. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). Accordingly, the Court applies an individual capacity analysis in its evaluation of claims relating to non-municipal parties.

For purposes of the present motion, the Court construes "Unknown Department Personnel" as doe defendants. *See Palacios v. County of San Diego*, No. 20-CV-450-MMA-DEB, 2020 WL 4201686, at *4 (S.D. Cal. July 22, 2020) (interpreting "Currently Unknown San Diego County Sheriff's Department Personnel" as doe defendants). Doe pleading is generally disfavored due to the impracticality of serving anonymous defendants. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates,* No. CV 18-00249 DKW-KJM, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018). However, in certain circumstances such as the present, "where the identity of alleged defendants will not be known prior to the filing of a complaint, . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants." *Gillespie*, 629 F.2d at 642. As such, dismissal of claims against the Unknown Department Personnel would only be warranted if (1) discovery would not uncover their identities, or (2) dismissal is warranted on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).[1]

Here, the Court finds that discovery could uncover the identities of the Unknown Department Personnel because such information likely lies with Defendants. It must then be determined whether Plaintiff's claims against Unknown Department Personnel should be dismissed on other grounds. That is, Plaintiff's claims against Unknown Department Personnel must survive the same 12(b)(6) analysis as the claims against Deputy Cassidy. For the reasons discussed *infra*, the Court finds that they do.

---

[1] Notably, Plaintiff does not need to show that the Unknown Department Personnel personally participated in the alleged conduct. *Compare Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018) (holding that named defendants "cannot be held liable for a constitutional violation under 42 U.S.C. § 1983 unless they were integral participants in the unlawful conduct"), *with Wakefield*, 177 F.3d at 1163 (rejecting the personal-participation test for doe defendants).

A local governing body is not liable under § 1983 unless action pursuant to official municipal policy of some nature caused a constitutional violation. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Plaintiffs must establish that the conditions were part of a policy, custom or practice officially adopted by defendants and that the policy or custom amounts to "deliberate indifference" to the constitutional right and is "the moving force" behind the violation. *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

    A.    **First Cause of Action – Failure to Protect/Deliberate Indifference to Safety Risks and Needs (42 U.S.C. § 1983)**

Defendants move to dismiss Plaintiff's § 1983 claim for deliberate indifference to safety risks and needs against Deputy Cassidy and Unknown Department Personnel. (ECF No. 11-1, at 11.)

Pretrial detainees have a due process right under the Fourteenth Amendment to be free from violence at the hands of other inmates.[2] *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt."). The Supreme Court held that "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners" because corrections officers have "stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Plaintiff must show that the actions of the prison officials rise to the level of "deliberate indifference." *Castro*, 833 F.3d at 1068.

---

[2] Throughout its analysis, the Court refers to cases that discuss deliberate indifference claims arising under both the Eighth and Fourteenth Amendments because the Supreme Court has held that the due process rights of a pretrial detainee, secured via the Fourteenth Amendment, "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

To find deliberate indifference by an individual under the Fourteenth Amendment a pretrial detainee must show:

>   (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
>   (2) those conditions put the plaintiff at substantial risk of suffering serious harm;
>
>   (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
>   (4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1071.

Plaintiff alleges that Deputy Cassidy and Unknown Department Personnel violated her Fourteenth Amendment rights by placing Plaintiff, an obviously transgender woman, in a minimally monitored cell with three men, then waiting to intervene when she was attacked. (ECF No. 1, at 7.) Specifically, Plaintiff claims that her safety risks and needs were obvious, and Defendants were actually aware of the risks because transgender women are particularly vulnerable to violence and sexual assault in male correctional settings. (*Id.* at 8.) Plaintiff claims that despite their knowledge, Deputy Cassidy and Unknown Department Personnel failed to take reasonable steps to safeguard Plaintiff and she suffered injuries as a result. (*Id.*)

Defendants first argue that Plaintiff only "believes" that Deputy Cassidy placed her in the holding cell but has not provided any facts to support this belief. (ECF No. 11-1, at 13.) Thus, Defendants reason Plaintiff has failed to allege that Deputy Cassidy made an intentional decision to move Plaintiff. (*Id.*) However, "[t]he *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability

plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (internal quotations omitted). The Court finds that Plaintiff has plausibly alleged, upon her belief, that Deputy Cassidy along with Unknown Department Personnel, decided to move Plaintiff to the holding cell intentionally within the meaning set out in *Castro*.

Defendants further attack Plaintiff's failure-to-protect claim by arguing that there are "no facts supporting that the conditions of the cell put Plaintiff at a substantial risk of suffering harm." (ECF No. 11-1, at 13.) Defendants explain that "[w]hile Plaintiff identifies as a transgender woman, placing her in a cell with men would not, without additional information and allegations regarding the other detainees in the cell, necessarily place her in a position where she was at a substantial risk of suffering harm." (*Id.*) Defendants reason that Plaintiff was not put at risk because she was not "in a housing area where she would have had to undress or change into jail attire." (*Id.*) Defendants thus conclude that there was no need for Deputy Cassidy to "take additional unspecified measures to reduce any speculative risk." (*Id.*)

Additionally, Defendants claim that "it would not be obvious to Deputy Cassidy or any other jail deputy that placing a transgender woman in a cell with males, without more information, would be a high-risk situation." (*Id.* at 14.) According to Defendants, "just because Plaintiff identifies as female does not mean she cannot interact with men, especially in a temporary situation." (*Id.*) Moreover, Defendants argue that there were no facts alleged that any of the men in the cell "harbored any prejudices against transgender women," or that Plaintiff was assaulted because she identifies as transgender. (*Id.*) Defendants maintain that without prior notice of any prejudice or susceptibility to violence, due in part to the absence of any expressed discomfort by Plaintiff, it was not obvious that placing Plaintiff in the cell would have resulted in Plaintiff being battered. (*Id.*)

The first prong under *Castro* provides a subjective test that evaluates "the officer's state of mind with respect to his physical acts." *Castro*, 833 F.3d at 1070. Where the claim, similar to the one at present, "relates to housing two individuals together, the

inquiry . . . would be whether the placement decision was intentional." *Id.* Plaintiff has plausibly stated a claim for violation of her Fourteenth Amendment right to be protected from violence at the hands of other inmates. Plaintiff alleges that despite her clear and known identity as a transgender woman, Deputy Cassidy and Unknown Department Personnel made an intentional decision to place Plaintiff in a holding cell with three men. As a result, Plaintiff was put at a substantial risk of suffering harm—which she did in fact suffer.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The "'mere lack of due care by a state official' does not 'deprive an individual of life, liberty, or property under the Fourteenth Amendment.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). Therefore, the plaintiff must show "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* Plaintiff has shown sufficient facts to demonstrate that a reasonable officer in the circumstances would have appreciated the risk of placing a transgender woman in a holding cell with men absent additional information. *See Farmer*, 511 U.S. at 826 ("[A] factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious."). There is no requirement that Plaintiff show that she would be specifically targeted by the man that attacked her or that Defendants knew the man would be likely to attack. *See Farmer*, 511 U.S. at 826 (holding that an official may not "escape liability by showing that he knew of the risk but did not think that the complainant was especially likely to be assaulted by the prisoner who committed the act"). It follows that Defendants' failure to mitigate the risk to Plaintiff was objectively unreasonable.

Accordingly, the Court finds Plaintiff has sufficiently alleged a § 1983 claim against Deputy Cassidy and Unknown Department Personnel for failure to protect her from violence while in custody.

B. **Second Cause of Action – *Monell* Liability (42 U.S.C. § 1983)**

Defendants move to dismiss Plaintiff's *Monell* claims against the County. (ECF No. 11-1, at 15–19.) Plaintiff asserts claims of *Monell* liability against the County under two theories. First, Plaintiff asserts that her injuries were actually and proximately caused by an unconstitutional County policy, custom, or practice. (ECF No. 1, at 8.) Second, Plaintiff claims that her rights were violated as a result of deficient training, discipline, and supervision of County jail personnel. (*Id.* at 9.)

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To establish municipal liability, Plaintiff must show "(1) that [s]he possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).

Absent a formally adopted policy, municipal liability can be premised on a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). The custom must be "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690–91). Similarly, a policy of inaction may subject a municipal to liability under *Monell*. *See Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014). In cases of inaction, the plaintiff must show that the defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation,"

and that "the municipality could have prevented the violation with an appropriate policy." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143, 1145 (9th Cir. 2012).

A municipality's failure to properly train its employees may amount to a policy of "deliberate indifference" if the need for more or different training is obvious and the inadequacy is likely to result in the violation of constitutional rights. *City of Canton*, 489 U.S. at 390. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *Id.* At 390. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Thus, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

### 1. Unconstitutional Policy, Custom, or Practice

Plaintiff claims that her constitutional rights were violated as an actual and proximate result of a County policy "consisting of a pattern among Department Personnel of failing to protect people in the County's care and custody." (ECF No. 1, at 8.) Plaintiff states that this policy "include[es] ignoring and failing to communicate critical information and failing to adequately monitor those in the County's care and custody." (*Id.*) According to Plaintiff it was pursuant to this policy that jail staff ignored critical information, notably her gender, and failed to monitor Plaintiff which resulted in her injuries. (*Id.* at 8–9.) In her Complaint, Plaintiff lists a series of incidents that took place in San Diego County jails to illustrate a pattern that supports her assertion of an inadequate policy. (*See id.* at 4–7.) While the factual circumstances surrounding the incidents vary, each event Plaintiff describes suggests a failure of jail staff to protect inmates while in County custody. (*See id.*)

Defendants contend that Plaintiff does not make the initial showing that there exists an underlying constitutional violation, but as discussed above Plaintiff sufficiently alleged a Fourteenth Amendment violation. (ECF No. 11-1, at 16.) Defendants also

argue that Plaintiff has failed to establish a custom or policy because the San Diego County jail events Plaintiff recounts involve drugs, suicide, or severe mental illness which are lacking from the present case and are thus "wholly unrelated." (*Id.* at 17.) Defendants characterize the issue in those cases as whether the County adequately protected those individuals from *themselves*, whereas the case at hand deals with whether the County had a policy or practice of failing to protect transgender inmates from *others*. (*Id.* at 17–18.) Defendants also dispute the causal connection between any policy or practice and Plaintiff's alleged constitutional violation. (*Id.* at 19.)

Plaintiff has sufficiently alleged that the County has an inadequate policy concerning the protection and monitoring of inmates, and that the inadequacy of that policy resulted in Plaintiff being placed at a substantial risk of suffering serious harm. Specifically, Plaintiff alleges that prison officials, pursuant to the inadequate policy, ignored her gender and vulnerability as a transgender woman which resulted in Plaintiff being placed in a holding cell with men and ultimately led to her assault. (ECF No. 1, at 8–9.) Further, Plaintiff establishes deliberate indifference by citing to the instances of inmates suffering injuries or death after jail officials were apparently aware of threatening situations yet failed to take measures to protect the inmates. (*See id.* at 4–7.) These events placed the County on notice of the inadequacy of their policy as they reveal a pattern of personnel failing to protect and monitor inmates in their care and custody. (*Id.* at 7.) Accordingly, Plaintiff has stated a *Monell* claim against the County of San Diego based on an unconstitutional policy, practice, or custom.

### 2. Failure to Train

Plaintiff asserts that her rights were also violated as an actual and proximate result of a County policy consisting of "deliberate indifference to the training, supervision, and disciplinary needs of Department personnel working in the County jails." (ECF No. 1, at 9.) Plaintiff insists that the "consistent misgendering of Plaintiff by multiple Department personnel, as well as the malice and recklessness with which Plaintiff was placed in danger, make the failure to adequately train and supervise Department personnel

obvious." (*Id.*)  Plaintiff states "[n]o well-trained corrections staff would have allowed this incident to happen." (*Id.*)

Defendant points out that Plaintiff provides "no facts regarding how the County failed to train, supervise, or discipline its deputies, over what period of time the allegedly inadequate training, supervision, or discipline occurred, and how the inadequate training or discipline directly influenced the specific conduct of deputies on the date of the incident." (ECF No. 11-1, at 18.)  Therefore, Defendants claim, Plaintiff has not alleged facts supporting a *Monell* claim based on a theory of failure to properly train.  The Court agrees.

Plaintiff does not point to prior allegations that put Defendants on actual or constructive notice of the County's failure to train its prison officials on the placement or protection of transgender or particularly vulnerable inmates like herself.  As such, Plaintiff fails to plead sufficient factual content that would allow the Court to "draw the reasonable inference" that the County had a custom or policy of failing to train its prison officials.  *Iqbal*, 556 U.S. at 678.  The standard set forth in *City of Canton* allows a *Monell* claim to move forward without alleging multiple instances of violations if the need for further training is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  But the Court does not find this case to be an "obvious" case as contemplated by the Supreme Court such as arming police officers without training them on the use of deadly force.  *City of Canton*, 489 U.S. at 390 & n.10.

Accordingly, Defendants' motion to dismiss the second cause of action based on deliberate indifference to the training, supervision, and disciplinary needs of Department personnel is granted.  Because it may be possible for Plaintiff to allege facts in support of her *Monell* claim for failure to properly train, leave to amend is granted.  *See* Fed. R. Civ. P. 15(a)(2); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[L]eave to amend should be granted unless the court determines that the

allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.")

## IV. QUALIFIED IMMUNITY

Defendants argue that Deputy Cassidy, along with any Unknown Department Personnel involved in the present case, are immune from liability under to § 1983 based on the defense of qualified immunity. (ECF No. 11-1, at 10–15.)

### A. Legal Standard

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro*, 933 F.3d at 1066–67 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  As previously noted, the Complaint meets the first prong of this inquiry.  The Court next turns to the second prong: whether the constitutional rights at issue were "clearly established" so as to put the individual defendants on notice that their conduct would violate the Constitution. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (holding that the clearly established inquiry looks to whether the defendant was "on notice that his specific conduct was unlawful").  "The plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft* v. *al-Kidd*, 563 U. S. 731, 742 (2011)).  However, there does not need to be "a case directly on

point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 740. The Supreme Court has made "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

### B. Discussion

To lay the foundation for clearly established law, Plaintiff relies on *Farmer v. Brennan*, 511 U.S. 825 (1994), where the Supreme Court set out the standard for failure-to-protect claims in a case about a transsexual woman who was attacked by a male inmate after being transferred into the general population of a male prison. (ECF No. 12 at 14.) Plaintiff also relies on *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), where the Ninth Circuit recognized the right established in *Farmer* and applied it to a case involving an intoxicated inmate who was attacked after being placed in a cell with a combative detainee. (*Id.*) Plaintiff argues that together, these cases "place this constitutional question beyond debate." (*Id.*)

Defendants frame the present issue narrowly, charging Plaintiff with identifying a "specific case on point" that would have put Deputy Cassidy on notice that placing Plaintiff, "a transgender woman, in a holding cell with men of an unspecified gender" violated her constitutional rights. (ECF No. 11-1, at 15.) Defendants support this argument by scrutinizing the factual circumstances of the present case, pointing out that *Farmer* dealt with "a transgender inmate's *housing* as opposed to temporary placement in a holding cell." (ECF No. 13, at 5 (emphasis added).) Similarly, Defendants argue that "*Castro* involved a minimally monitored sobering cell where the plaintiff was severely beaten" after attempting to get the attention of prison officials, while here "there are no facts that Plaintiff alerted Deputy Cassidy that she felt unsafe after being placed in the cell." (*Id.*)

"[A] prisoner's right to be protected from violence at the hands of other inmates . . . has been clearly established since the Supreme Court's decision in *Farmer v. Brennan* in 1994." *Wilk v. Neven*, 956 F.3d 1143, 1150 (9th Cir. 2020); *see also Ortiz v. Jordan*,

562 U.S. 180, 190 (2011) (stating that the holding of *Farmer v. Brennan* is "not in controversy" when considering qualified immunity). Indeed, the Ninth Circuit recently recognized various failure-to-protect inmate cases in which *Farmer* provided the basis for "clearly established" law. *See Wilk*, 956 F.3d at 1147–48.

The level of specificity contemplated by Defendants is unwarranted. Plaintiff is not required to identify a case with identical or even "materially similar" facts to demonstrate that the law was clearly established. *See Hope*, 536 U.S. at 739–41; *see also Castro*, 833 F.3d at 1067 ("The Supreme Court need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated [the plaintiff's] right."). In light of this Circuit's established precedent, Plaintiff has plausibly shown that a reasonable official would be on notice that placing Plaintiff, a transgender woman, in a holding cell with three men violated a clearly established right to protection from violence at the hands of other inmates. Accordingly, the Court denies the motion to dismiss the claims against Deputy Cassidy and Unknown Department Personnel based on qualified immunity at this stage in the proceedings.

V.     **STATE LAW CLAIMS**

   A.     **Third Cause of Action – Violation of California's Bane Act (Cal. Civ. Code § 52.1(b))**

Defendants move to dismiss Plaintiff's claims against Deputy Cassidy and Unknown Department Personnel pursuant to California's Bane Act on the basis that Plaintiff fails to allege threats, intimidation, or coercion. (ECF No. 11-1, at 23.)

The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civ. Code § 52.1(b). The Bane Act does not require a showing of "threats, intimidation and coercion" separate from the underlying

constitutional violation. *Cornell v. City of San Francisco,* 225 Cal. Rptr. 3d 356, 382–83 (2017); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). However, the plaintiff must make an additional showing of "specific intent" to violate the arrestee's right. *Reese*, 888 F.3d at 1043.

An adequately pled claim for deliberate indifference satisfies the specific intent requirement under the Bane Act. *See Reese*, 888 F.3d at 1045 ("[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights."); *Greer v. County of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2021 WL 615046, at *9 (S.D. Cal. Feb. 17, 2021) ("[A]n allegation of a defendant's deliberate indifference to a plaintiff's serious medical needs suffices to state a claim under the Bane Act because of the coercion, or specific intent, inherent in the deliberate indifference standard."); *Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) (finding under *Cornell* that "a prison official's deliberate indifference to serious medical needs is a coercive act that rises above mere negligence"); *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 89 (N.D. Cal. 2013) ("Because deliberate indifference claims necessarily require more than 'mere negligence,' a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs . . . adequately states a claim for relief under the Bane Act.").[3]

It has already been established that Plaintiff has sufficiently alleged deliberate indifference against Deputy Cassidy and Unknown Department Personnel. Because Plaintiff is not required to make a separate showing of threats, intimidation, or coercion, or demonstrate specific intent, the Court finds that Plaintiff has plausibly alleged a claim

---

[3] The standard for deliberate indifference to a plaintiff's serious medical needs is identical to the standard for showing deliberate indifference to safety in a failure-to-protect context. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) ("[C]laims for violations of the right to adequate medical care . . . must be evaluated under [the] objective deliberate indifference standard" articulated in *Castro*.); *see also id.* at 1125 (listing the same elements for deliberate indifference to medical needs as deliberate indifference to safety).

under California's Bane Act against Deputy Cassidy and Unknown Department Personnel.

### B. Fourth Cause of Action – Negligence

Defendants move to dismiss Plaintiff's negligence cause of action against Deputy Cassidy and Unknown Department Personnel. (ECF No. 11-1, at 8.)

To state a claim for negligence under California law, plaintiffs must allege (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach was the legal cause of the resulting harm. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).

Plaintiff claims that Deputy Cassidy and Unknown department personnel had a duty to act with ordinary care in carrying out their duties as corrections officers, which included reasonable care in jailing individuals with heightened safety risks and needs. (ECF No. 1, at 10.) Plaintiff asserts that this duty also included reasonable care with regard to communicating critical information, making cell placements, monitoring inmates, and intervening in inmate assaults. (*Id.*) Plaintiff alleges that Deputy Cassidy and Unknown Department Personnel breached this duty when they placed Plaintiff in substantial danger and failed to promptly intervene. (*Id.*) Plaintiff claims her injuries are a direct and proximate result of this breach. (*Id.*)

Plaintiff's negligence claim is based on the same allegations as the claims for deliberate indifference against Deputy Cassidy and Unknown Department Personnel. As discussed above, Plaintiff adequately alleged those claims. For the same reasons the Court finds the allegations provide Defendants with sufficient notice of the basis for a negligence claim. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013).

### VI. MOTION TO STRIKE

Defendants move to strike Plaintiff's Complaint paragraphs 24, 25(a)–(g), and 26(a)–(g). (ECF No. 11-1, at 24.) Paragraph 24 of the Complaint states: "As a topline matter, for example, the mortality rate in San Diego County jails is the highest among California's largest counties. At least 140 people died in County custody from 2009 to

1  2019." (ECF No. 1, at 4.)  Paragraphs 25 and 26 consist of the lists of incidents that took
2  place in County jails that were previously discussed. (*Id.* at 4–7.)

3  **A.**     **Legal Standard**

4  A Rule 12(f) motion to strike allows a court to "strike from a pleading an
5  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
6  Fed. R. Civ. P. 12(f).  "Motions to strike are 'generally disfavored . . . because of the
7  limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F.
8  Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d
9  1177, 1180 (N.D. Cal. 2001)).  Consequently, "[m]otions to strike are generally not
10 granted unless it is clear that the matter sought to be stricken could have no possible
11 bearing on the subject matter of the litigation." *Alegre v. United States*, No. 16-CV-
12 02442-AJB-KSC, 2021 WL 5750859, at *2 (S.D. Cal. Dec. 2, 2021).  "Any doubt
13 concerning the import of the allegations to be stricken weighs in favor of denying the
14 motion to strike." *Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL
15 3219411, at *8 (S.D. Cal. Aug. 9, 2022).  "With a motion to strike, just as with a motion
16 to dismiss, the court should view the pleading in the light most favorable to the
17 nonmoving party." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057
18 (N.D. Cal. 2004) (citing *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965
19 (C.D. Cal. 2000)).

20 **B.**     **Discussion**

21 Defendants move to strike the aforementioned sections of the Complaint on the
22 basis that the case at hand "has nothing to do with in-custody deaths, suicides, drug
23 overdoses, or severe psychiatric disabilities" and the inclusion of such allegations are
24 impertinent and scandalous.  (ECF No. 11-1, at 24.)  Defendants add that these
25 allegations are not only irrelevant but confuse the actual issues before the Court.  (*Id.*)
26 Although this case does not involve a drug overdose, suicide, or severe mental
27 illness, the list of prior incidents bears directly on Plaintiff's ability to sufficiently allege
28 a pattern of Department personnel failing to protect people in its custody.  Thus, because

the prior incidents relate to Plaintiff's *Monell* claim for an unconstitutional policy, custom, or practice, the Court denies Defendants' motion to strike paragraphs 24, 25(a)–(g), and 26(a)–(g) of the Complaint.

## VII. CONCLUSION

For the reasons stated above, Defendants' motion to strike (ECF No. 11) is **DENIED**. Defendants' motion to dismiss (ECF No. 11) is **GRANTED** as to the second cause of action insofar as the claim is premised on a failure to properly train. The motion to dismiss is **DENIED** in all other respects. Plaintiff is granted leave to amend. Should Plaintiff choose to amend, she must file and serve the amended complaint, if any, no later than **October 28, 2022**. Defendants shall file and serve a response, if any, no later than the time provided in Federal Rule of Civil Procedure 15(a)(3).

IT IS SO ORDERED.

Dated: September 29, 2022

_____
Hon. M. James Lorenz
United States District Judge